[No. 22537. Department One. December 2, 1930.]

JAMES K. McCOURTIE, *by his Guardian ad litem Estella McCourtie, Respondent,* v. EDITH F. BAYTON *et al., Appellants.*[1]

[1]Reported in 294 Pac. 238.

*Arthur M. Harris* and *John E. Howley,* for appellants.

*Ryan, Desmond & Ryan,* for respondent.

HOLCOMB, J.—This is an appeal from an order of the trial court granting a new trial on the sole ground that an erroneously prejudicial instruction had been given which probably induced a verdict by the jury in favor of appellants. The material facts, some of which are undisputed, are substantially as follows:

Respondent, a minor suing by his mother as guardian ad litem, is a telegraph messenger delivering messages by motorcycle. He lived with his mother, who was the housekeeper for one John DeBoer, and a young brother. DeBoer rented a house in Georgetown, a suburb of Seattle, belonging to appellant Edith F. Bayton. James Gordon was the agent in charge of the renting of the house. On or before February 5, 1929, the precise time being in dispute, DeBoer was first shown the house by a young son of Gordon's who was employed in the office of his father. After inspection, DeBoer went to the office of Gordon, closed the deal for the rental of the house, paid one month's rent in advance and, as he testified, was then given the key. Gordon would not say that he gave the key to DeBoer, but that he might have given it to the plumber whom he employed to make repairs.

A receipt given by Gordon to DeBoer was first dated February 5, 1929. DeBoer testified that he started to move into the house on February 5, but found that the water pipes were frozen, as the weather was very cold, and that they would have to be thawed out and some slight repairs made. He went to the office of Gordon and discussed the matter, and it was then agreed that the rental receipt should be changed so as to recite that the rental which had been paid on February 5

should not begin until February 8 and recite that it was in payment of rental from that date to March 8, 1929. The dates were accordingly changed.

On February 6, DeBoer, respondent's mother, respondent and the young brother, moved into the house. Gordon had employed a repair man named Shoner to thaw out the pipes and make the necessary repairs. Shoner went to work on February 6 and was at work thawing the pipes, and when Gordon went to inspect the work, he saw respondent's mother and DeBoer on the premises and noticed that the furniture had been moved in and most of it in place. Gordon testified that he made no objection to their occupancy as being premature or without right; and that he gave them no notice to vacate and took no steps to eject them, is shown by the absence of any proof thereof.

The repairmen were obliged, in order to make repairs to the pipe, to make an opening in the back porch by removing several pieces of plank in the flooring of the porch, making an opening about twenty inches wide by thirty inches long. The evidence is conflicting as to whether or not, when the workmen left the premises that evening, they made any barricade around the opening. Respondent, after his working hours were over on the night of February 6, about midnight, returned to the house, and, in passing over the back porch, stepped into the hole, which he testified the workmen had left unguarded, and sustained a fracture of the leg.

At the trial, counsel for appellants requested the court to give the following instruction:

"An invitation to use the property on which work is being done extends to the property in its then condition, and licensees using the property assume the risk of such condition.

"If you find from the evidence that, at the time of the accident in question, the tenancy of John DeBoer

had not commenced, but that he and James McCourtie and the plaintiff were enjoying the use of the premises without compensating the landlord therefor, merely occupying the premises gratuitously until the beginning of the tenancy, and if you find further that the defendants or the repairman Shoner did not wantonly set a deliberate trap by which James McCourtie should be injured, the plaintiff cannot recover, even though the defendants or the repairman Shoner were guilty of negligence in leaving the porch in a dangerous condition, and your verdict will be for the defendants.''

In support of this request, counsel cited 45 C. J. 834, 837, §§ 241, 244; *Glass v. Colman,* 14 Wash. 635, 45 Pac. 310.

On appeal, appellants insist that it is conclusively shown by the rental receipt that the relation of landlord and tenant did not exist between DeBoer, Mrs. McCourtie and the owner of the premises, Mrs. Bayton, prior to February 8, and that consequently the relation existing was no more than that of a licensee by permission during the period from February 5 to February 8. Some authorities are cited to the effect that the relation of landlord and tenant arises only from contract, express or implied; 35 C. J. 952; *Glass v. Colman, supra; Nordgren v. Lawrence,* 74 Wash. 305, 133 Pac. 436; *Woolen v. Sloan,* 94 Wash. 551, 162 Pac. 985; and that occupancy is not synonymous with tenancy. *Browder v. Phinney,* 37 Wash. 70, 79 Pac. 598; 45 C. J. 788 and 789.

Appellants also quote and rely upon Rem. Comp. Stat., § 10619, as follows:

''When premises are rented for an indefinite time, with monthly or other periodic rent reserved, such tenancy shall be construed to be a tenancy from month to month, or from period to period on which rent is payable, . . .''

Whether a contractual tenancy for the three

days was established or not is in dispute; and a mere receipt for rent is no more final and unalterable than any other simple receipt. It is not a contract. It may be varied, explained or added to, by parol evidence.

This case is not controlled by the cases cited by appellants. None of them involved the question of when a tenant's rights began, as against the landlord.

■ The relation of landlord and tenant is established where the owner of the premises permits another to take possession thereof for any determinate period. *McLennan v. Grant*, 8 Wash. 603, 36 Pac. 682.

■ Conceding, however, that the jury had the right to resolve the testimony in favor of Gordon that he did not give permission to DeBoer and his household to take possession at any time prior to February 8, nevertheless, when they did take possession on February 6 and he made no complaint thereof, they must be considered as tenants by sufferance. Another statute, not cited by either party, Rem. Comp. Stat., § 10621, reads:

"Whenever any person obtains possession of premises without the consent of the owner or other person having the right to give said possession, he shall be deemed a tenant by sufferance merely, and shall be liable to pay reasonable rent for the actual time he occupied the premises, and shall forthwith on demand surrender his said possession to the owner or person who had the right of possession before said entry, and all his right to possession of said premises shall terminate immediately upon said demand."

It is manifest that, under the foregoing statute, the landlord was protected by the legal right to recover reasonable rent for the actual time of the occupancy and the right to demand immediate possession of the premises which would terminate the right of possession at once. No such steps were taken. Therefore, even granting that no agreement had been reached as to the tenancy from February 5 to 8, there was a ten-

ancy by sufferance. As was said in *Williamson v. Hallett*, 108 Wash. 176, 182 Pac. 940, quoting the same statute: " . . . the legislature has put the question at rest in this state by statute." Compare *Sheppard v. Coeur D'Alene Lumber Co.*, 62 Wash. 12, 112 Pac. 932, Ann. Cas. 1912C 909, 44 L. R. A. (N. S.) 267.

Under our law, the relation of landlord and tenant manifestly existed as between DeBoer and appellant Mrs. Bayton. Respondent was rightfully upon the premises as a member of the household of DeBoer. It was his residence, and he was not a trespasser.

The instruction, under the theory of appellants regarding an invitation to use the property gratuitously, while work was being done, and referring to the occupants as licensees assuming the risk of the condition of the premises as they then were, and to the effect that the landlord and her agent would be liable only in case they or their repairmen had wantonly set a deliberate trap by which respondent was injured, and even though appellants were negligent in leaving the porch in a dangerous condition, respondent could not recover, was manifestly and prejudicially erroneous.

It is also settled in this state that, if the landlord agrees or assumes to make repairs on the rented premises, he is liable for negligence in so doing. *Mesher v. Osborne*, 75 Wash. 439, 134 Pac. 1092, 48 L. R. A. (N. S.) 917. And that the real estate agent handling the premises for a non-resident landlord is likewise liable for negligence in failing to make necessary repairs; there being no distinction as regards the agent's liability whether the injuries flow from his nonfeasance or misfeasance. *Lough v. John Davis & Co.*, 30 Wash. 204, 70 Pac. 491, 94 Am. St. 848, 59 L. R. A. 802.

We have also held that the guest, servant, etc., of the tenant is usually held to be so identified with the

tenant that his right of recovery for injury as against the landlord is neither more nor less than that of the tenant would be, had he suffered the injury. *Moohr v. Victoria Investment Co.,* 144 Wash. 387, 258 Pac. 43.

For the foregoing reasons, we conclude that the order granting a new trial was right and it is affirmed.

MITCHELL, C. J., TOLMAN, PARKER, and MAIN, JJ., concur.

